UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-20424-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

    Plaintiff,
v.

**CARLOS MEDINA**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Carlos Medina's ("Medina['s]") Motion to Suppress Evidence Obtained as a Result of Unlawful Search of Advanced Medical of Doral and Request for Evidentiary Hearing ("Motion") [ECF No. 81], filed November 18, 2015. The Court has carefully reviewed the Motion and its exhibits; a Notice of Filing Supplemental Composite Exhibit 2 to Defendant's Motion . . . [ECF No. 83]; the Government's Opposition to Defendant's Motion . . . ("Response") [ECF No. 96], and exhibits [ECF Nos. 96-1 to 96-4]; Defendant's Reply . . . [ECF No. 111]; and applicable law. Significantly, Defendant has not provided his own sworn declaration or affidavit. For the reasons explained below, the Motion and request for evidentiary hearing are denied.

### I.    BACKGROUND

On June 9, 2015, a grand jury returned an Indictment [ECF No. 3] charging: Defendants, Medina, Ana Rumbaut ("Rumbaut"), and Sheyla Diaz ("Diaz"), with conspiracy to commit health care fraud and wire fraud in violation of Title 18, United States Code, section 1349 (Count One); all Defendants with substantive health care fraud in violation of 18 U.S.C. section 1347

(Count Two); Medina and Diaz with conspiracy to defraud the United Sates and to receive health care kickbacks in violation of 18 U.S.C. section 371 (Count Three); and Rumbaut with conspiracy to defraud the United States and pay and receive health care kickbacks (Count Four), and two counts of the payments of kickbacks in connection with a federal health care program in violation of 42 U.S.C. section 1320a-7b(b)(2)(A) (Counts Five and Six).  The charges in the Indictment pertain to Medina's conduct as vice president and operator of Doral Community Clinic, Inc. ("Doral Clinic").  (*See* Indictment ¶ 15).

Following Medina's arrest on June 16, 2015 (*see* Minute Order [ECF No. 12]), a magistrate judge set Medina's Bond Conditions (*see* [ECF No. 35]) on July 1, 2015 to include home confinement, with the exception of visits pertaining to medical needs or treatment, court appearances, attorney and court-ordered obligations, and religious observances.  (*See id.* ¶ n). Medina was also required, while on bond, not to be employed in the health care field.  (*See id.* ¶ q).  All of these restrictions were in place since Medina's June 16 arrest and initial appearance before a different magistrate judge.  (*See* Minute Order).

On September 3, 2015, Government agents, including FBI Special Agent Hector Tobon, debriefed Diaz.  (*See* Mot. 2 (citing FBI-302 Report)).  She gave information pertaining to a different company, Advanced Medical of Doral, Inc. ("Advanced Medical"), as well as a log book she said would contain evidence of fraudulent activity.  (*See id.*).  According to Diaz, who was similarly on home confinement and restricted from working in the health care field, the log book was in a white binder at Advanced Medical before her arrest, but she did not know if it was still there.  (*See id.*).  Diaz believed either Medina or the property manager for the building in which Advanced Medical had its office would most likely have the binder.  (*See id.*).

On September 8, 2015, Agent Tobon interviewed the property manager of the landlord, 9300 Forza Real Estate Holdings, LLC, Georgina Menendez ("Menendez"), who advised him she had been property manager of the building that housed Advanced Medical since July 16, 2015. (*See* Resp. 4 (citation omitted)). According to Menendez, she was not aware of anyone entering the Advanced Medical premises since the time she became property manager. (*See id.*). She told Agent Tobon she had already requested a locksmith change the Advanced Medical suite's locks because the tenant had not paid rent in two to three months and she needed to access the office space. (*See id.* 5). She further stated a locksmith was on the way at the time of Agent Tobon's arrival. (*See id.*). Menendez advised she had previously sent a letter requesting payment of overdue rent to the tenant but received no response. (*See id.*).

Menendez gave Agent Tobon a copy of the Advanced Medical May 1, 2014 lease agreement ("2014 Lease"), which showed Yurelis Valeron as president of the tenant, Advanced Medical, and Medina's signature as witness. (*See id.*; 2014 Lease [ECF No. 96-2] 1, 19). The Advanced Medical office was located in a commercial building located at 9300 NW 25 Street in Miami, and occupied 1,000 square feet in suite number 209. (*See* 2014 Lease 1). The Government highlights the following "key terms" of the 2014 Lease: the lease is for one year; the tenant agrees not to use or permit use of the premises for any illegal purpose; in the event of non-payment of rent, the landlord is entitled to exercise all rights and remedies provided or as are available at law or in equity; 13 non-exhaustive categories of events of default include the tenant failing to pay rent when due, and if tenant fails to perform any obligation more than two times within a 12-month period, including the payment of rent, the third offense is a non-curable event of default; the tenant ceasing to do business in or abandoning a substantial portion of the premises is an event of default; upon the occurrence of any of the events of default, the landlord

can, without notice and without demand for possession, terminate the lease and terminate the tenant's right to occupy and reenter and take possession of the premises. (*See* Resp. 5–6 (citing relevant portions of 2014 Lease)).

Agent Tobon asked Menendez permission to enter the Advanced Medical offices and examine its contents. (*See id.* 6). She consented. (*See id.*). Menendez entered Suite 209 with Agent Tobon, and inside he observed a white binder that appeared to contain a list of patients and requested permission of Menendez to copy it. (*See id.*). She again consented. (*See id.*). Agent Tobon also observed materials that appeared to be patient files and other documents. (*See id.*). It is unclear where the white binder or patient files were located within the 1,000-square-foot office, if the suite was a single area or separated into smaller offices, and if any of the items observed and copied came from any individual office such as an office perhaps designated for Medina.

On September 16, 2015, Agent Tobon submitted his Affidavit in Support of An Application for a Search Warrant ("Tobon Affidavit") [ECF No. 96-1][1] to Magistrate Judge Andrea Simonton, requesting a warrant to search the Advanced Medical office. In the Affidavit, he represented Medina was vice president and operator of Doral Clinic; and officer or director, owner or operator, and registered agent of Advanced Medical. (*See id.* ¶ 10). The Affidavit states Medina opened Advanced Medical one floor above the offices of Doral Clinic, and later Doral Clinic moved its operations to the Advanced Medical offices. (*See id.* ¶¶ 18, 21). After Agent Tobon included additional information upon questioning, Judge Simonton approved the

---

[1] Medina challenges many of the statements contained in the Tobon Affidavit, in part, based on an interview "the Defense" conducted of Menendez, summarized in the Reply. (Reply 9-10). Whoever conducted that interview for the defense did not submit an affidavit attesting to the claimed inaccuracies in the Tobon Affidavit.

4

search warrant, authorizing a search of Advanced Medical and seizure of items found inside. (*See* Resp. 6 (citation omitted)).

Agents conducted the search the same day, taking 19 boxes of evidence and five computer processing units. (*See id.*). Again, it is unclear from the information supplied what areas of the 1,000 square foot suite were searched; if any areas were separated by partitions or interior offices; whether any of the interior office was Medina's particular office; and where the documents and items seized were taken from. The Government has not supplied a completed inventory of the property taken. (*See* Search and Seizure Warrant [ECF No. 96-1] 2). Among the items seized is a May 1, 2015 lease agreement for Advanced Medical ("2015 Lease"), containing many of the same key terms summarized above, as well as a page missing from the 2014 Lease that reads in part, "[i]n the event Landlord elects to re-enter or take possession of the Premises after Tenant's default, Tenant hereby waives notice of such re-entry or repossession." (2015 Lease [ECF No. 96-3] ¶ 24(b) (alteration added)).

On October 23, 2015, a grand jury returned a Superseding Indictment [ECF No. 66], charging Defendants with violations of 18 U.S.C. sections 1349, 1347, and 371; and 42 U.S.C. section 1320a-7b(b)(2)(A). The Superseding Indictment includes allegations relating to conduct at Doral Clinic and Advanced Medical, and modifies the timeframe of certain allegations. Three new counts of substantive health care fraud against all Defendants are included, while the substantive health care fraud count of the original Indictment is removed. Diaz pled guilty to Count One of the Superseding Indictment on October 27, 2015 (*see* [ECF Nos. 70–71]), while Rumbaut and Medina are scheduled for trial on January 11, 2016 (*see* [ECF No. 68]).

## II. DISCUSSION

In the Motion, Medina argues: (1) the initial consent search of Advanced Medical was unlawful; (2) without details obtained from the consent search, the Tobon Affidavit fails to provide an independent source of probable cause; (3) the Court should hold a *Franks*[2] hearing; and (4) all evidence obtained as a result of the consent search and the search conducted pursuant to the warrant should be suppressed as fruits of the poisonous tree. As the Court disagrees with Medina's first argument, and agrees with the Government that Medina has not shown he possessed the requisite expectation of privacy, the Court does not reach the remaining contentions.

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV (alterations added). Application of this right "depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks and citations omitted). This inquiry may or may not be described as "Fourth Amendment standing." *Compare Kentucky v. King*, 563 U.S. 452, 457 n.1 (2011) (noting the state conceded respondent had "Fourth Amendment standing to challenge the search"), *with United States v. Hawkins*, 681 F.2d 1343, 1344–45 (11th Cir. 1982) ("[A] correct analysis will show that a focus on 'standing' is not now the proper approach to the ultimate question;" rather "the proper analysis proceeds directly to the substance of a defendant's Fourth Amendment claim to determine whether the

---

[2] Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing on a motion to suppress the fruits of the government's search if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56.

defendant had a reasonable and legitimate expectation of privacy . . . ." (alterations added; citation omitted)).

A defendant challenging the legality of a search bears the burden of showing he has standing by proving he possessed an objectively reasonable expectation of privacy in the area searched or items seized. *See Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010) (citations omitted); *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984) (citation omitted). To establish a reasonable expectation of privacy, the defendant must manifest a subjective expectation of privacy in the items searched or seized, and society must be prepared to recognize that expectation as legitimate or objectively reasonable. *Rehberg*, 611 F.3d at 842 (citation omitted); *United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir. 2002) (citation omitted). In other words, a defendant must establish both a subjective and an objective expectation of privacy. *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006) (citation omitted). The subjective prong is a factual inquiry, *United States v. McKennon*, 814 F.2d 1539, 1543 (11th Cir. 1987) (citations and footnote call number omitted), requiring a person exhibit an actual expectation of privacy, *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (citation omitted). The objective prong is a question of law. *See McKennon*, 814 F.2d at 1543 (citations omitted).

Determining the legitimacy of a privacy expectation entails a balancing of interests; no single factor is determinative. *United States v. McCullough*, No. 1:11-CR-136-JEC/AJB-01, 2012 WL 11799871, at *4 (N.D. Ga. Oct. 9, 2012) (citation omitted). Factors courts generally consider include property ownership, whether the defendant has a possessory interest in the things seized or place searched, whether the defendant has the right to exclude others from the place, whether he has exhibited a subjective expectation the place would remain free from

7

governmental invasion, whether he took precautions to maintain his privacy, and whether he was legitimately on the premises. *Id.* (citing *United States v. Salvucci*, 448 U.S. 83, 92 (1980); *United States v. Pitt*, 717 F.2d 1334, 1337 (11th Cir. 1983); *United States v. Haydel*, 649 F.2d 1152, 1154–55 (5th Cir. Unit A 1981)).

"An affidavit or testimony from a defendant is nearly essential for establishing [a] defendant's subjective expectation of privacy for Fourth Amendment purposes." *United States v. Best*, 255 F. Supp. 2d 905, 910 (N.D. Ind. 2003) (alteration added; citing *United States v. Ruth*, 65 F.3d 599, 604–05 (7th Cir. 1995) (in evaluating order on motion to suppress predicated upon facts in search warrant affidavit and DEA agent's testimony, court agreed with district court that "'without an affidavit or testimony from the defendant it is almost impossible to find a privacy interest because this interest depends, in part, on the defendant's subjective intent and his actions that manifest that intent'" (internal citation omitted)); other citations omitted). As pointed out by the Government, Medina cannot carry his burden of showing a reasonable expectation of privacy in the Advanced Medical office and its contents "merely by relying upon the government's theory of the case." (Resp. 9 (citing cases)); *see also United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995) (explaining it was defendant's "obligation to present evidence of his standing, or at least to point to specific evidence in the record which the government presented and which established his standing. He did not do so.").

In the absence of any sworn statement by Medina describing the basis or bases for his subjective expectation of privacy in the Advanced Medical office, the Court is left with the following facts that appear in the sworn statement of Agent Tobon,[3] whose credibility Defendant is presently challenging as evidenced by pending discovery disputes being heard by Magistrate

---

[3] Allegations in the Superseding Indictment describing Defendant's relationship to Advanced Medical are not evidence that can be used to substantiate Medina's expectation of privacy. *See Zermeno*, 66 F.3d at 1062 ("The government's assertions in its pleading are not evidence.").

Judge John J. O'Sullivan. (*See* Sealed *Ex Parte* Motion to Compel [ECF No. 100]; Order [ECF No. 102]; Amended Order setting discovery hearing [ECF No. 104]; Order [ECF No. 106]). Agent Tobon describes Medina as an officer or director, owner or operator, and registered agent of Advanced Medical. (*See* Tobon Aff. ¶ 10). On the basis of his relationship to Advanced Medical, whatever that might be, Medina asserts "it is undisputed" he had a reasonable expectation of privacy "in the subject premises." (Mot. 6). Medina's burden is not so easily satisfied.

Certainly the Fourth Amendment's prohibition on unreasonable searches and seizures applies not only to private residences, but also to property used for commercial purposes, as here. *See New York v. Burger*, 482 U.S. 691, 699 (1987) (citation omitted); *Mancusi v. DeForte*, 392 U.S. 364, 369 (1968) ("It has long been settled that one has standing to object to a search of his office, as well as of his home." (citations omitted)). That the property is commercial, however, and in this case not Defendant's, impacts the Court's consideration of "the totality of the circumstances." *Baron-Mantilla*, 743 F.2d at 870 (citing *Rakas v. Illinois*, 439 U.S. 128, 152 (1978) (Powell, J., concurring)). "Property used for commercial purposes is treated differently for Fourth Amendment purposes from residential property. An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (alteration added; internal quotation marks and citation omitted); *see also United States v. Chaves*, 169 F.3d 687, 691 (11th Cir. 1999) (noting the significantly diminished expectation of privacy in a business as compared to a home (citations omitted)); *McLaughlin v. Elsberry, Inc.*, 868 F.2d 1525, 1529 (11th Cir. 1989) (same (citations omitted)). "The Supreme Court's treatment of the expectation of privacy that the owner of commercial property enjoys in such property has differed significantly from the

protection accorded an individual's home." *United States v. Hall*, 47 F.3d 1091, 1095 (11th Cir. 1995) (citing *Donovan v. Dewey*, 452 U.S. 594, 598–99 (1981)).

Several themes appear in cases considering whether an expectation of privacy in business premises exists. Given Fourth Amendment rights are personal in nature, "an individual cannot assert a corporation's Fourth Amendment rights absent a showing that he had an independent privacy interest in the goods seized or the area searched." *United States v. Vicknair*, 610 F.2d 372, 379 (5th Cir. 1980) (citations omitted). "[T]he owner of commercial property has a reasonable expectation of privacy in those areas immediately surrounding the property only if affirmative steps have been taken to exclude the public." *Hall*, 47 F.3d at 1096 (alteration added). The "expectation of privacy in business premises is analyzed in light of the legal form of the business." *McCullough*, 2012 WL 11799871, at *6. And yet, "the possessory interest attendant to sole ownership of a corporation is not, in and of itself, sufficient to confer upon the owner Fourth Amendment standing as to all corporate property." *United States v. Okun*, 3:08-CR-132, 2009 WL 255624, at *4 (E.D. Va. Feb. 2, 2009) (citing cases); *see also United States v. Britt*, 508 F.2d 1052, 1055–56 (5th Cir. 1975) ("When a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment . . . ." (alteration added; citation omitted)), *cert. denied* 423 U.S. 825 (1975). While a substantial ownership interest in the corporation may support standing, additional evidence of a relationship to the area searched is required. *See McCullough*, 2012 WL 11799871, at *6 (citations omitted).

The "'great variety of work environments' requires analysis of reasonable expectations 'on a case-by-case basis.'" *Id.* at *5 (quoting *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987); other citations omitted). Courts have identified several factors for a court to consider in

evaluating a defendant's expectation of privacy in business premises. In *United States v. Bush*, 582 F.2d 1016 (5th Cir. 1978), the court noted relevant factors include whether the documents seized were prepared by the defendant, whether the area searched was a storage area and not defendant's personal working area, whether the defendant was on the premises at the time of the search, and whether the search was directed at corporate activity generally and not at the corporate officer personally. *See id.* at 1019 (citing *Britt*, 508 F.2d 1052). There must be a "nexus between the area searched and the work space of the defendant." *Britt*, 508 F.2d at 1056; *see also United States v. Chuang*, 897 F.2d 646, 649 (2d Cir. 1990) (citation omitted). As noted in *McCullough*, "[t]he greater the degree of exclusivity and control over a work area, and the more time a defendant spends there, the more likely standing is to be found . . . [while] the less private a work area — and the less control a defendant has over that work area — the less likely standing is to be found." 2012 WL 11799871, at *7 (alterations added; citation omitted).

In *United States v. Anderson*, 154 F.3d 1225 (10th Cir. 1998), in determining a defendant's expectation of privacy in a search of a workplace, the court considered whether the item seized was personal property or otherwise kept in a private place separate from other work-related material, whether the defendant had custody or immediate control of the item when officers seized it, and whether the defendant took precautions on his own behalf to secure the place searched or things seized from interference without his authorization. *See id.* at 1230–32. Additional relevant factors include "whether the person shared the area with anyone else; whether others could be expected to enter the area or disturb papers in it without permission; and whether the person has a key." *United States v. Evaschuck*, 65 F. Supp. 2d 1360, 1364 (M.D. Fla. 1999) (internal citations omitted).

Turning to the record in this case, Medina had no possessory interest in the Advanced Medical office; the 2014 and 2015 Lease agreements identify Advanced Medical as the tenant, and Medina's name does not even appear on the agreements as the company's president. Medina appears to be an officer, director, owner or operator, and registered agent of Advanced Medical. Based on the Tobon Affidavit and Medina's silence, it is unknown what position Medina occupied at Advanced Medical, although it is known he was its registered agent. It is unknown if Medina had an ownership interest in Advanced Medical. It is unknown how much time, if any, Medina spent in Suite 209. It is unknown how many others had access to the Advanced Medical office and worked from that location. It is unknown if Medina had a key to Suite 209, and how many others had keys to the Advanced Medical office.

No information is provided about the layout of the 1,000-square-foot suite, whether it contained one or more office sub-divisions within it, whether any of the office space was designated for use solely by Medina, and whether any interior doors or furniture doors contained locks. It is unknown if Medina authored the contents of the white binder or of any of the patient files seized, or whether those documents were a collaborative effort of Advanced Medical's employees. It is unknown if Medina had access to any of the 19 boxes of evidence and five computer processing units, whether others did as well, and what efforts, if any, were undertaken to keep those materials secure. It is unknown if any of the items seized are Medina's personal property or whether he kept the items in a private place separate from other work-related materials. It is unknown where the items seized were even taken from, be it from a storage area or common room, or a private office sub-division marked for use by Medina.

Given the lease terms summarized *supra*, and the bond conditions denying him access to the Advanced Medical office, it behooved Medina to make arrangements to keep the rent current

or to secure any of his property contained within it. No evidence has been presented showing what precautions, if any, Medina took on his own behalf to secure the places searched or things seized from interference without his authorization. *See Anderson*, 154 F.3d at 1230–32.

### III.    CONCLUSION

"[A] motion to suppress must in every critical respect, *including allegations of standing*, be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *United States v. Ford*, 34 F.3d 992, 994 (11th Cir. 1994) (alteration and emphasis added; internal quotation marks and citations omitted). Where a defendant fails to provide sufficient factual allegations to establish standing, the Court is not required to hold an evidentiary hearing. *See United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000). Because Medina has not met his burden to demonstrate the legitimate expectation of privacy necessary to pursue the Motion or be entitled to a hearing, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 81]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 15th day of December, 2015.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:    counsel of record